**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

JOHN B. STACKS                                                                           PLAINTIFF

v.                                               No. 4:10CV00718 JLH

BLUEJAY HOLDINGS LLC; TEN X
HOLDINGS LLC; RICHARD F. BESTON, JR.;
JOHN W BRANCH; and JASON MAPLES                                    DEFENDANTS

<u>**OPINION AND ORDER**</u>

On June 22, 2010, Plaintiff John Stacks filed a complaint in this Court against the defendants

for breach of contract; violations of the Arkansas Deceptive Trade Practices Act ("ADTPA"), Ark.

Code Ann. § 4-88-101 *et seq.*; and deceit after Bluejay Holdings allegedly failed to pay Stacks the

agreed-upon purchase price for a sixty-five percent interest in three water companies that Stacks

owned.  Stacks also seeks punitive damages against the defendants.  The defendants have filed a

motion to dismiss Stacks's complaint for lack of subject matter jurisdiction and improper venue.

*See* Fed. R. Civ. P. 12(b)(1), (3).  They allege that venue is governed by a forum selection clause in

the promissory note that was signed by Bluejay Holdings LLC and Ten X Holdings LLC.  They also

contend that the choice-of-law provisions in the purchase agreement and promissory note dictate

dismissal. In response, Stacks concedes that Count I, which alleges a claim under the promissory

note, should be dismissed for improper venue.  He contends, however, that the remaining four counts

are not controlled by the forum selection clause and should not be dismissed because of the choice-

of-law provisions.  For the following reasons, the defendants' motion to dismiss is granted in part

and denied in part.

**I.**

On January 19, 2010, Stacks contracted to convey a sixty-five percent membership interest

in certain water companies that Stacks owned to Rainmaker Financial Group, Inc.  The purchase agreement included a choice-of-law provision, which stated that the agreement "shall be governed by the laws of the State of Illinois as to all matters including, but not limited to, matters of validity, construction, effect, performance, and remedies."  (Compl. Ex. A ¶ 11.7.)  On February 24, 2010, Rainmaker Financial Group assigned its interest in the purchase agreement to Bluejay Holdings. Bluejay Holdings and Stacks amended the original purchase agreement on February 26, 2010. Pursuant to the amended agreement, Ten X Holdings agreed to indemnify Stacks against any loss under the purchase agreement.  On March 26, 2010, the parties executed a closing memorandum, which effectively amended the purchase agreement and provided that Bluejay Holdings would convey a promissory note at closing and cash funding of the purchase price no later than April 30, 2010.  That same day, Ten X Holdings and Bluejay Holdings executed a promissory note in the amount of $5.7 million in connection with the closing agreement.  In a section of the note entitled "Governing Law," the parties included a choice-of-law provision and forum selection clause.  The April 30, 2010, deadline passed without payment being made on the promissory note, and Stacks commenced this action.  In addition to seeking recovery under the promissory note and purchase agreement, Stacks alleges that the defendants violated the ADTPA and committed the tort of deceit when they led him to believe that they had access to cash sufficient to conclude the transaction.  The defendants seek to dismiss the complaint on the basis of the forum selection clause in the promissory note and the choice-of-law provisions in the note and purchase agreement.

## II.

### A.  Forum Selection Clause

The United States Supreme Court has held that forum selection clauses in contracts "are

prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 92 S. Ct. 1907, 1913, 32 L. Ed. 2d 513 (1972). "When an action subject to a forum-selection clause is initiated in a forum other than that which was contemplated by agreement, dismissal is appropriate." *Webb Candy, Inc. v. Walmart Stores, Inc.*, No. 09-2056, 2010 WL 2301461, at *5 (D. Minn. Jun. 7, 2010) (citing *M.B. Rests., Inc. v. CKE Rests., Inc.*, 183 F.3d 750, 753 (8th Cir. 1999) (affirming a district court that had dismissed an action for improper venue based on a forum selection clause) and *Hauenstein & Bernmeister, Inc. v. Met-Fab Indus., Inc.*, 320 N.W.2d 886, 889 (Minn. 1982) (same)); *see also Marano Enters. of Kan. v. Z-Teca Rests., L.P.*, 254 F.3d 753, 758 (8th Cir. 2001) (same).[1] Although the Eighth Circuit has not expressly ruled on the issue, most circuit courts and other courts in this district have said that Federal Rule of Civil Procedure 12(b)(3) is the proper vehicle for seeking dismissal on the basis of a forum selection clause. *Webb Candy*, 2010 WL 2301461, at *4 (noting that the Eighth Circuit has not taken a position on whether claims should be brought under Rule 12(b)(3) or Rule 12(b)(6)); s*ee Sucampo Pharm., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 550 (4th Cir. 2006) (considering and rejecting approaches using Rule 12(b)(1) or 12(b)(6) to analyze a motion to dismiss based on a forum selection clause); *Rainforest Cafe, Inc. v. EklecCo, L.L.C.*, 340 F.3d 544, 546 n.5 (8th Cir. 2003) (recognizing "that there is some controversy as to whether Rule 12(b)(3) or 12(b)(6) is the proper vehicle for bringing a motion to dismiss based on improper venue

---

[1]This Court has noted that "most courts recognize that a transfer is preferable to a dismissal when enforcing a forum selection clause that permits venue in another federal district." *CCI of Ark., Inc. v. Baggette Constr., Inc.*, No. 09-0513, 2009 WL 3010986, at *2 (E.D. Ark. Sept. 17, 2009) (quoting 14D Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3803.1 (3d ed. 1998)). However, according to the cited case law, the Eighth Circuit has implicitly adopted the view that dismissal is appropriate.

when the issue turns on a forum selection clause in the parties' underlying contract"); *Lipcon v. Underwriters at Lloyd's London*, 148 F.3d 1285, 1289 (11th Cir. 1998) (motions to dismiss based on forum selection clauses are properly brought under Rule 12(b)(3)); *Richards v. Lloyd's of London*, 135 F.3d 1289, 1292 (9th Cir. 1998) (analyzing a motion to dismiss based on a forum selection clause under Rule 12(b)(3)); *Frietsch v. Refco, Inc.*, 56 F.3d 825, 830 (7th Cir. 1995) (determining that a motion to dismiss on the basis of a forum selection clause should be analyzed under 12(b)(3)); *Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953, 956 (10th Cir. 1992) ("A motion to dismiss based on a forum selection clause frequently is analyzed as a motion to dismiss for improper venue under Fed. R. Civ. P. 12(b)(3)."); *Rebsamen Ins., Inc. v. Mutual Holdings (Bermuda) Ltd.*, 228 F.R.D. 637, 639 (E.D. Ark. 2005) ("A lack of venue challenge, based upon a forum-selection clause, is appropriately brought as a Fed. R. Civ. P. 12(b)(3) motion to dismiss."). *But see Silva v. Encyclopedia Britannica Inc.*, 239 F.3d 385, 387 (1st Cir. 2001) ("[A] motion to dismiss based upon a forum-selection clause is treated as one alleging the failure to state a claim for which relief can be granted under Fed. R. Civ. P. 12(b)(6).").[2]

The parties do not dispute the validity of the forum selection clause in the promissory note, but they do dispute its proper scope: Stacks contends that, although Count I must be dismissed for improper venue, "the forum selection clause . . . has no effect on the plaintiff's claims for breach of contract, violations of the Arkansas Deceptive Trade Practices Act, and deceit." (Pl.'s Resp. to Mot. to Dismiss ¶ 2.) The defendants contend that dismissal of the entire action is appropriate. The scope

---

[2] In fact, the Eighth Circuit has implicitly addressed the issue, upholding a district court order dismissing an action for lack of venue due to a forum selection clause in the contract between the parties. *Marano*, 254 F.3d at 758 ("In these circumstances, we hold that the District Court correctly dismissed the case for improper venue."); *see also CCI of Ark.*, 2009 WL 3010986, at **2-3 (explaining *Marano*).

of a forum selection clause is a matter of contractual interpretation.  *See Servewell Plumbing, LLC v. Fed. Ins. Co.*, 439 F.3d 786, 788 (8th Cir. 2006) (indicating that contractual interpretation governs the "meaning, scope, or applicability of the forum selection clause").  Whether certain claims are " 'governed by forum selection provisions depends upon the intention of the parties reflected in the wording of particular clauses and the facts of each case.' " *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 693 (8th Cir. 1997) (quoting *Berrett v. Life Ins. Co. of the S.W.*, 623 F. Supp. 946, 948-49 (D. Utah 1985)).

The wording of the forum selection clause at issue here is as follows: "This Note will be governed by, and construed in accordance with, Illinois law (excluding the conflicts of law provisions), *and the parties agree to the exclusive jurisdiction and venue of state or federal courts located in Chicago, Illinois*."  (Compl. Ex. E, ¶ 5(D) (emphasis added).)  On its face, the forum selection clause is ambiguous.  It is possible to read the clause in one of two ways: broadly as applying to all possible claims between the parties or narrowly as applying to just those claims arising under "[t]his Note."  (*Id.*); *see Ehrhardt v. Penn Mut. Life Ins. Co.*, 902 F.2d 664, 667 (8th Cir. 1990), *cert. denied*, 498 U.S. 855, 111 S. Ct. 152, 112 L. Ed. 2d 118 (1990) (determining that a contract is ambiguous when it is reasonably susceptible to more than one interpretation).  Stacks's narrow interpretation of the forum selection clause (i.e. that it applies only to the note) is more convincing for several reasons.[3]  First, the choice-of-law provision that immediately precedes the forum selection clause applies only to the note—not to the purchase agreement or to any claims pertaining to the purchase agreement.  Second, all of the other provisions in the note address issues

---

[3]"Having found the clause ambiguous, [the Court] appropriately consider[s] extrinsic evidence to interpret [it]."  *Terra Int'l*, 119 F.3d at 693 n.8.

*specific to the note*; no provisions discuss the purchase agreement or anything else outside the scope of the note.  Third, the purchase agreement contains a choice-of-law provision similar to the one in the note, but it does not contain a forum selection clause, which suggests that the parties did not contemplate that disputes arising under the contract would be litigated in a particular forum.  Fourth, although the note was made "in conjunction with certain additional agreements" between Stacks, Bluejay Holdings, and Ten X Holdings, the note itself did not amend the terms of those agreements, nor could it.[4]  (Compl. Ex. E p.1.)  The promissory note and purchase agreement are interdependent, as per the closing agreement, but they "create separate obligations which can be enforced in separate actions."  *Socline Corp. v. Podell*, No. 93-1500, 1996 WL 109076, at *2 (S.D.N.Y. Mar. 12, 1996); *see also Cafesjian v. Armenian Assembly of Am., Inc.*, No. 07-02079, 2008 WL 906194, at *5 (D. Minn. Mar. 31, 2008) (determining that a forum selection clause in a promissory note did not apply in a breach of contract claim, although it would apply in a suit to enforce the promissory note).  As a result, "there is no reason to think they must be enforced in the same forum."  *Socline Corp.*, 1996 WL 109076, at *2; *see also Green Island Holdings, LLC v. British Am. Isle of Venice, Ltd.*, No. 09-80207, 2009 WL 1730954, at * 2 (S.D. Fla. Jun. 18, 2009) (dismissing one count of the plaintiff's complaint for improper venue the guaranty under which the claim was brought contained a forum selection clause that required the claim to be brought in another forum); *Boatmen's First Nat'l Bank of Kansas City v. Am. Ins. Co.*, No. 89-0880, 1990 WL 482121, at *3 (W.D. Mo. Jun. 26, 1990) (finding that forum selection clause in a bond required that only one of the plaintiff's claims, which was brought pursuant to the bond, be dismissed for improper venue).  The forum-selection clause

---

[4]The purchase agreement could be amended "only by written agreement signed by each of the parties."  (Compl. Ex. A ¶ 11.2.)  The promissory note was not signed by Stacks.

applies only to Count I—not to the breach of contract or tort claims alleged in the complaint—and Count I must be dismissed.

**B.  Choice-of-Law Provision**

The defendants also suggest that the Court should dismiss some or all of Stacks's remaining claims because of a choice-of-law provision in the purchase agreement that applies the laws of the State of Illinois to "all matters including, but not limited to, matters of validity, construction, effect, performance and remedies."[5]  (Compl. Ex. A ¶ 11.7.)  To ascertain the effect of a choice-of-law provision in a contract at issue in a diversity suit, courts apply the forum state's choice-of-law principles.  *Schwan's Sales Enters., Inc. v. SIG Pack, Inc.*, 476 F.3d 594, 597-98 (8th Cir. 2007). Under Arkansas law, choice-of-law provisions are given effect " 'provided that the law selected is reasonably related to the transaction and does not violate a fundamental public policy of the state.' " *Guardian Fiberglass, Inc. v. Whit Davis Lumber Co.*, 509 F.3d 512, 515 (8th Cir. 2007) (applying Michigan law to a breach-of-contract claim) (citing Arkansas Civil Practice and Procedure § 6:7).[6] In this case, Illinois law is reasonably related to the sale of Stacks's water companies—Bluejay Holdings and Ten X Holdings are Illinois companies, and Defendants Beston, Branch, and Maples are domiciled in Illinois.  Also, there is no evidence that the application of Illinois law to the case at hand would violate a fundamental public policy of Arkansas.  As per the choice-of-law provision, Illinois law governs the purchase agreement.

Although Illinois law governs the purchase agreement, "[t]he Court has not located an

---

[5]There is also a choice-of-law provision that applies Illinois law in the promissory note.

[6]A choice-of-law provision will determine *what* law applies—not *where* the case is litigated.  *See Guardian Fiberglass*, 509 F.3d at 515 (determining, based on a choice-of-law provision, that the Arkansas court should apply Michigan law).

Arkansas case addressing the issue of whether a valid contractual law provision is dispositive on the choice of law issue for related tort claims." *Britelink, Inc. v. TeleCorp PCS, Inc.*, No. 03-0207, 2004 WL 5509416, at *3 (E.D. Ark. May 6, 2004). In a similar case in this district, the court determined that, where state law is unclear, the most appropriate method for determining the applicability of a choice-of-law provision is to consider whether, based on the wording of the provision, it "applie[s] to the facts of a particular legal claim." *Id.* The court in that case concluded that the plaintiff's statutory fraud claim was beyond the scope of the choice-of-law provision in the agreement, which applied to claims involving the "validity, interpretation, and construction" of the agreement. *Id.* Other district courts, as well as the Eighth Circuit, have articulated a similar standard: "[I]f analysis of a tort claim connected to a contract involves interpretation of that contract, then the contract's choice-of-law provisions apply to the tort claim." *Express Scripts, Inc. v. Walgreen Co.*, No. 08-01915, 2009 WL 4574198, at *3 (E.D. Mo. Dec. 3, 2009) (citing *Holden Farms, Inc. v. Hog Slat, Inc.*, 347 F.3d 1055, 1061 (8th Cir. 2003) (applying Minnesota law to make that determination that a choice-of-law provision in a contract applied to a negligent misrepresentation claim)).

The choice-of-law provision in the purchase agreement at issue here does not encompass Stacks's ADTPA and deceit claims.[7] Stacks alleges that the defendants violated the ADTPA and committed the tort of deceit by verbally misrepresenting to Stacks that they had funds available to

---

[7]If it did, the Court would dismiss Stacks's ADTPA claim, since it alleges a cause of action only available under Arkansas law. *See N.W. Airlines, Inc.*, 111 F.3d at 1392 n.4 ("The district court did not err in applying Minnesota law [pursuant to the clause] to dismiss the claims for violation of the Texas Deceptive Trade Practices Act * * * or unjust enrichment[.]"). The Court would have no need to dismiss the deceit claim, however, since common law deceit is a cause of action under Illinois law. *See Washington Courte Condominium Ass'n v. Washington-Golf Corp.*, 267 Ill. App. 3d 790, 814-15, 643 N.E.2d 199, 216 (Ill. Ct. App. 1994) (listing the basic elements of common law fraud and deceit).

carry out the agreement and inducing Stacks to proceed with the transaction.  These claims are beyond the scope of the choice-of-law provision, which applies only to matters pertaining to the agreement itself, "including, but not limited to, matters of validity, construction, effect, performance, and remedies."  *See Britelink, Inc.*, 2004 WL 5509416, at *3 ("Plaintiffs' statutory fraud claim, which includes allegations of fraud in the inducement of the Agreement itself, is beyond the scope of the choice of law provision in the Agreement, which purports to apply to the 'validity, interpretation, and construction of the Agreement.' "); *In re Cajun Forge Co., Inc.*, No. 04-5074, 2008 WL 5144536, at *8 (Bankr. W.D. La. Sept. 18, 2008) (holding that a choice-of-law clause with identical language to the provision at issue here did not govern the plaintiff's fraud claims because the provision was "narrowly framed to apply to matters arising from [the agreement]").  *But see N.W. Airlines, Inc. v. Astraea Aviation Servs., Inc.*, 111 F.3d 1386, 1392 (8th Cir. 1997) (finding that a choice-of-law clause applied to claims alleging deceptive trade practices and misrepresentation because those claims "raise[d] issues of performance and compensation for work done under the . . . contracts" and fell within the ambit of the choice-of-law provision).  Thus, the Court need not dismiss Stacks's remaining claims simply because the parties chose to apply Illinois law to claims arising under the purchase agreement.[8]

---

[8]The defendants do not allege that, under Arkansas choice-of-law principles, Illinois law should apply to the plaintiff's tort claims, and a detailed conflicts analysis is not necessary here. "Were the Court called upon to undertake a conflicts analysis as to Plaintiff's tort related claims, it would apply Professor Robert A. Leflar's five choice-influencing factors, which the Arkansas Supreme Court adopted in *Wallis v. Mrs. Smith's Pie Co.*, 261 Ark. 622, 550 S.W.2d 453 (1977)." *Britelink, Inc.*, 2004 WL 5509416, at *3 n.4.  Those factors include (1) predictability of results; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interests; and (5) application of the better rule of law. *Id.*  Were the Court to undertake such an analysis, it would most likely find that Arkansas law applies to Stacks's ADTPA claim: the ADTPA is a statutory claim available only in Arkansas, and Arkansas has a strong interest in " 'protecting its residents who are victims of

For the reasons stated above, the defendants' motion to dismiss Stacks's complaint is GRANTED with respect to Count I of the complaint and DENIED with respect to Counts II through V.  Count I of the complaint is dismissed without prejudice.

IT IS SO ORDERED this 29th day of September, 2010.

J. LEON HOLMES
UNITED STATES DISTRICT JUDGE

---

torts.' " *Id.* (quoting *Harris v. City of Memphis, Tenn.*, 119 F. Supp. 2d 893, 896 (E.D. Ark. 2000)).